UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARAH JEAN THOMPSON, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | No. 1:12-cv-369-DBH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) concluded, in the absence of substantial evidence, that her anxiety, depression, and adjustment disorder were nonsevere, (ii) did not properly evaluate whether her mental impairments met or equaled a listed impairment, specifically Listing 12.05, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), and (iii) made a determination of her residual functional capacity ("RFC") that was unsupported by substantial evidence. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 12) at 1-11. I find no error in the administrative law judge's determination that the plaintiff's anxiety, depression, and adjustment disorder was nonsevere. Should the court agree, this disposes, as well, of the plaintiff's second argument (concerning Listing 12.05), which hinges in part on the success of her first.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 11, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Nonetheless, I agree with the plaintiff that the administrative law judge erred in omitting from his RFC finding a material limitation that he purported to adopt. On that basis, I recommend that the court reverse and remand the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of a cognitive disorder, Finding 2, Record at 18; that she did not have an impairment or combination of impairments that met or medically equaled any listed impairment, Finding 3, *id*. at 20; that she had the RFC to perform a full range of work at all exertional levels but was limited to simple, routine, repetitive work, could interact with the public but could not be responsible for addressing complaints or other concerns from the public, could not tolerate sudden or unpredictable workplace changes, and could not perform work requiring any complex written or verbal communication or more than occasional simple written communication, Finding 4, *id*. at 21; that, considering her age (21 years old, defined as a younger individual, on the date her application was filed), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 24; and that she, therefore, was not disabled since September 2, 2009, the date of her application, Finding 10, *id*. at 25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary*

*of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 3 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical

findings. 20 C.F.R. § 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

## I. Discussion

### A. Failure To Find Severe Depression, Anxiety, or Adjustment Disorder

In declining to find that the plaintiff had any severe mental impairment apart from a cognitive disorder, the administrative law judge credited the opinion of examining consultant Adrienne J. Butler, Ed.D., over that of examining consultant Michael W. Curless, Ph.D. *See* Record at 19-20. He noted:

> The [plaintiff] testified that she has crying spells, is moody, and fights with her parents more often than she used to. She also testified that she attends counseling currently, but does not take any medication. As will be discussed below, the [plaintiff] is not limited in her daily life and does not suffer any limitations as a result of her alleged depression, anxiety and adjustment disorder. The [plaintiff] has undergone two separate psychological evaluations, both of which came to different conclusions. The first examination, conducted by Dr. Adrienne Butler, revealed only cognitive deficits. Dr. Butler noted that the [plaintiff] was pleasant and cooperative, even smiling frequently. Dr. Butler did not observe any signs of depression, anxiety, or adjustment disorder. Dr. Michael Curless, on the other hand, diagnosed the [plaintiff with] an anxiety disorder and noted that [she] presented as depressive and anxious. He opined that [her] depressive/anxious mood swings would compromise [her] ability to work. Dr. Curless' opinion concerning the [plaintiff's] alleged anxiety is not supported by the record and, as such, is given little weight.

*Id*. (citations omitted).

The plaintiff argues that the choice to credit the Butler opinion over that of Dr. Curless was unsupported by substantial evidence because Dr. Butler, unlike Dr. Curless, was not asked to evaluate the plaintiff's emotional functioning and made no observations one way or the other as to whether she had depression, anxiety, or an adjustment order. *See* Statement of Errors at 2-3. She notes that she did not allege such problems at the time of her application and that she

4

revealed for the first time to Dr. Curless that she was experiencing difficulties with anxiety and symptoms of post-traumatic stress disorder ("PTSD") in the wake of an abusive relationship with an ex-boyfriend. *See id*. at 3. She points out that Dr. Curless diagnosed her with anxiety disorder, not otherwise specified, with symptoms of PTSD, and stated that her "ability to work [was] compromised by her depressive/anxious mood swings that appear to distract her, leading her to obsess about her past." *Id*. at 3-4 (quoting Record at 278).

She contends that, in these circumstances, Dr. Curless' opinion cannot fairly be described as inconsistent with that of Dr. Butler or with the record generally. *See id*. at 4. She adds that it is consistent with the later opinion of Amanda Schaefer, LMSW-CC, who treated her following her diagnosis by Dr. Curless and found that she "would have substantial difficulty obtaining and maintaining employment given her cognitive and learning disorder diagnosis and psychosocial stressors." *Id*. at 4 (quoting Record at 327).

I find no error. Dr. Butler was not limited to commenting on the plaintiff's then-alleged cognitive difficulties. She was asked, *inter alia*, to perform a mental status examination, comment on the plaintiff's activities of daily living, and provide diagnoses in accordance with "DSM IV," the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.). *See* Record at 216. She described the plaintiff's activities of daily living and social functioning and, as part of a mental status examination, assessed her appearance, behavior, and speech, thought process, thought content, and mood and affect. *See id*. at 217-19. She noted that the plaintiff's speech was at a normal rate and volume, she made regular eye contact, and her affective responsiveness was pleasant and cooperative. *See id*. at 218-19. Thus, the administrative law judge fairly described Dr. Butler as having made no observations of

anxiety, depression, or affective disorder, rendering her opinion inconsistent with that of Dr. Curless.

Moreover, the administrative law judge found the Curless opinion inconsistent not only with the Butler opinion but also with evidence that the plaintiff was "not limited in her daily life and [did] not suffer any limitations as a result of her alleged depression, anxiety and adjustment disorder." *Id*. at 19. In so stating, he alluded to the following discussion later in his opinion:

> In terms of activities of daily living, . . . the [plaintiff] does not appear to be particularly limited in her adaptive functioning. [She] has a young daughter whom she cares for. She testified that she feeds and dresses her daughter, does chores around the house, cooks, drives, goes to the store and visits with family. She did not report any difficulties with personal care. Additionally, in terms of social functioning, the [plaintiff] has a boyfriend that she visits with occasionally. As for hobbies, the [plaintiff] reportedly watches television, swims and does crafts. The [plaintiff's] mother reported that the [plaintiff] needs help with recipes, or any sort of reading, and has difficulty following spoken instructions. Generally, the [plaintiff] appears to function well with little restrictions.

*Id*. at 22-23.

At oral argument, the plaintiff's counsel disputed the accuracy of these findings, asserting that the administrative law judge overlooked evidence indicative of serious deficits in adaptive functioning, for example, that (i) she had lived with her parents all of her life except for a period of a few months during which she lived with a boyfriend who beat her, (ii) she had worked briefly at only two jobs, one of which entailed helping an aunt drop mail in boxes and the other of which entailed working at a convenience store, where she ran into problems because she could not make correct change, (iii) her parents helped her care for her child, for example, her mother accompanied her when she took her child to a doctor's appointment because she could not remember what was said, (iv) she was only able to obtain her driver's license because her mother read the test aloud to her, and (v) she cannot pay bills or balance a checking account. However,

6

those deficits seemingly stem from the plaintiff's cognitive impairments rather than the depressive/anxious mood swings described by Dr. Curless.

Nor does the Schaefer opinion validate the Curless opinion or invalidate that of Dr. Butler.  As the administrative law judge observed, Schaefer's opinion "does not reflect any mental impairment beyond cognitive deficits."  *Id*. at 24.  Schaefer ascribed the plaintiff's expected substantial difficulties with employment to her cognitive and learning disorder diagnoses and psychosocial stressors, rather than to anxiety, depression, or an adjustment disorder.  *See id* at 327.

As counsel for the commissioner noted at oral argument, the plaintiff points to only one piece of evidence suggesting any vocational limitation attributable to anxiety, depression, or an adjustment disorder – the Curless opinion.  However, Dr. Curless did not identify specific limitations or indicate their severity; he merely stated that the plaintiff's "ability to work [was] compromised by her depressive/anxious mood swings that appear to distract her, leading her to obsess about her past."  *Id*. at 278.

In short, the administrative law judge's finding that the plaintiff did not suffer from severe impairments of depression, anxiety, or adjustment disorder is supported by substantial evidence, including the Butler opinion and a lack of evidence that her functioning was more than mildly affected by emotional (as opposed to cognitive) difficulties.[3]

---

[3] The plaintiff also argues that the administrative law judge erred in relying at Step 2 on her Global Assessment of Functioning ("GAF") scores, which ranged from 52 to 60, reflecting moderate symptoms.  *See* Statement of Errors at 5-6.  Even assuming that the administrative law judge erred in relying on GAF scores at Step 2, any error was harmless.  As counsel for the commissioner noted at oral argument, "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions."  *LaFontaine v. Astrue*, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec., *aff'd* Oct. 13, 2011).  The GAF scores at issue do not necessarily reflect symptoms attributable to an emotional, as opposed to cognitive, impairment.

### B. Asserted Error in Analyzing Listing 12.05

The plaintiff next faults the manner in which the administrative law judge analyzed whether she met Listing 12.05, which pertains to mental retardation. *See* Statement of Errors at 7-9. Listing 12.05 provides, in relevant part:

> 12.05  *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*\*\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05.[4]  To meet Listing 12.05, a claimant must satisfy the "capsule definition," that is, demonstrate deficits in adaptive functioning that initially manifested before age 22, plus make the showing required by subsection A, B, C, or D. *Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738, at \*9 (D. Me. July 19, 2011) (rec. dec., *aff'd* Aug. 24, 2011), *aff'd*, 473 Fed. Appx. 8 (1st Cir. 2012).  The plaintiff relies on subsection C, asserting that the administrative law judge wrongly found that she failed to (i) meet the capsule definition or (ii) demonstrate the existence of severe impairments of anxiety, depression, and adjustment disorder. *See* Statement of Errors at 7-9.  Nonetheless, I have determined that the administrative law judge supportably deemed the plaintiff's anxiety, depression, and adjustment disorder nonsevere.  If the court agrees, that is dispositive of her Step 3 argument.

---

[4] Listing 12.05, and other relevant Social Security regulations, were amended effective September 3, 2013, to replace the term "mental retardation" with the term "intellectual disability." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499, 46499-500 (Aug. 1, 2013).  No substantive change was made. *See id.*

8

### C. Challenge to RFC Determination

The plaintiff finally complains that, despite purporting to adopt Dr. Butler's findings, the administrative law judge omitted a material restriction – a need for enhanced explanation, repetition, or reinforcement of verbal information. *See* Statement of Errors at 10-11. She notes that the vocational expert present at her hearing testified that a person who had that restriction would have difficulty performing all of the jobs identified in response to the administrative law judge's hypothetical question. *See id.* at 11.

Dr. Butler found, in relevant part:

> In regard to work-related activities, [the plaintiff] would be able to understand tasks consistent with Borderline/Slow Learner ability. She is apt to be more successful with tasks of a concrete, routine nature. She is likely to have significant difficulty with the retention and recall of verbal information. She would need enhanced explanation, [repetition] and reinforcement of verbal information in order to acquire and recall it. [She] did not exhibit attentional difficulties. It is the impression of the examiner that [she] would be likely to sustain focused attention on tasks within her capabilities. . . . She may have difficulty with adaptation should speeded or pressured performance be required.

Record at 220-21.

In his decision, the administrative law judge recounted Dr. Butler's findings, noting, *inter alia*, that she had "opined that the [plaintiff] would need explanation and reinforcement of verbal information[.]" *Id.* at 23 (citation omitted). He explained that "because the opinion of Dr. Butler is consistent with the record as a whole and well supported by the objective medical evidence, the opinion of Dr. Butler is afford[ed] great weight." *Id.*[5]

---

[5] As the plaintiff's counsel pointed out at oral argument, Dr. Butler's opinion is bolstered by other record evidence, including a 2006 vocational rehabilitation certification noting that the plaintiff "require[d] specialized instructional methods, extended learning periods and accommodations, not typically made for others, due to cognitive limitations and language difficulties, in order to acquire academic and work skills," as well as "assistance, not typically made for other workers, due to short-term memory and language deficits, in order to adjust to the psychological and environmental demands of the workplace." Record at 138-39.

However, in fashioning a mental RFC and transmitting it to the vocational expert present at the plaintiff's hearing, the administrative law judge omitted a need for enhanced explanation, repetition, and reinforcement of verbal information in order to acquire and recall it. *See* Finding 4, *id*. at 21; *see also id*. at 51-53. Instead, he conveyed a hypothetical question describing a person who, *inter alia*, was "limited to simple, routine, repetitive work" in a setting "free of sudden and unpredictable work place changes[,]" performing work that did "not require any – or significant – any complex written, verbal communication for more than occasionals [sic] in both [sic] written communication." *Id*. at 51-52.[6] The vocational expert testified that such a person could perform the jobs of (i) cleaner, (ii) marker position, merchandise, and (iii) dishwasher. *See id*. at 52.

On cross-examination, the plaintiff's representative asked the vocational expert, "If the limitation for verbal or written – the complex verbal or written communication was adjusted to be an individual [who] is going to have difficulty with retention and recall of verbal information such that they would need enhanced explanation, repetition or reinforcement of verbal information, would that – such a person have difficulty with these jobs?" *Id*. at 53. The vocational expert responded: "If I understand what you indicated, that you're saying if somebody had to have over and over again being told what to do, if that occurred on a continuing, sustained basis, yes, it would." *Id*.

The administrative law judge, thus, purported to adopt, but omitted to convey to the vocational expert, a limitation that the vocational expert testified would call into question a person's ability to perform the jobs that the administrative law judge relied upon at Step 5 to meet the commissioner's burden.

---

[6] In his written decision, the administrative law judge set forth this portion of his RFC determination as follows: "[T]he [plaintiff's] work could not require any complex written or verbal communication or more than occasional simple written communication." Finding 4, Record at 21.

At oral argument, counsel for the commissioner contended that this case is indistinguishable from *Winders v. Astrue*, No. 1:11-cv-325-JAW, 2012 WL 3137140 (D. Me. July 10, 2012) (rec. dec., *aff'd* Aug. 1, 2012), in which this court rejected an argument similar to that made by the plaintiff here. She argued that Dr. Butler's restriction was encompassed within the administrative law judge's RFC finding, which she noted was consistent with the RFC opinions of two nonexamining state-agency consultants who had the benefit of review of the Butler report, Brian Stahl, Ph.D., and Lewis F. Lester, Ph.D.[7] As the plaintiff's counsel rejoined, *Winders* is materially distinguishable.

In *Winders*, the claimant argued that (i) the administrative law judge wrongly gave little weight to mental limitations identified by state-agency examining and reviewing consultants (coincidentally, Drs. Butler and Lester) and, (ii) although the administrative law judge in an abundance of caution included mental limitations, they did not adequately reflect Drs. Butler's and Lester's findings. *See Winders*, 2012 WL 3137140, at *3-*4. Among Dr. Butler's findings was "a need for multiple reinforcements for new learning[.]" *Id*. at *4 (citation and internal quotation marks omitted). The administrative law judge deemed the claimant limited, in relevant part, to simple instructions, limited tasks, a consistent schedule, and only occasional, routine changes. *See id*.

The court agreed that the administrative law judge had wrongly rejected the Butler and Lester opinions but found the error harmless in that their opinions were adequately reflected in the administrative law judge's RFC determination. *See id*. at *4-*5. With respect to the need for multiple reinforcements for new learning, the court noted, in relevant part:

---

[7] Drs. Stahl and Lester concluded that the plaintiff was able to understand and remember simple/repetitive instructions and tasks, perform simple tasks, work with co-workers and supervisors although not the public, and adapt to simple or occasional and routine changes. *See* Record at 246, 272.

11

> The plaintiff cited no authority specific to such a limitation, but it does appear to be inconsistent with the Level 2 Reasoning required in the checker job as described in the DOT [Dictionary of Occupational Titles]: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT § 222.687-010. My own research located no case law addressing such a limitation in the context of Social Security jurisprudence. The administrative law judge's only stated reason for rejecting Dr. Butler's findings was insufficient, as I have already noted. Dr. Lester acknowledged Dr. Butler's related finding that the [claimant] "[w]ould likely need multiple reinforcements of new learning[,]" Record at 560, but found that the [claimant's] ability to "understand and remember very short and simple instructions" was not significantly limited, *id*. at 562. I do not see any other category on the Psychiatric Review Technique forms filled out by Dr. Lester that could be construed to address the "new learning" limitation.
>
> While the question is a close one, I conclude that any omission of Dr. Butler's "new learning" limitation from the [claimant's] RFC is not a sufficient basis for remand.

*Id*. at *5. *Winders* is distinguishable in several respects.

First, while Drs. Stahl and Lester had the benefit of review of Dr. Butler's report, neither specifically acknowledged the limitation at issue. *See* Record at 243, 269. It is not self-evident that Drs. Stahl's and Lester's RFC assessments, or the RFC finding of the administrative law judge, encompass Dr. Butler's finding of a need for enhanced explanation, repetition, and reinforcement of verbal information in order to acquire and recall it. Dr. Butler described the plaintiff as "likely to have significant difficulty with the retention and recall of verbal information." *Id*. at 220. She did not indicate that, if the plaintiff were confined to simple tasks or simple verbal communication, she would no longer need accommodations. *See id*. at 220-21.[8]

---

[8] The court in *Winders* noted that the limitations at issue *appeared* to be addressed by the administrative law judge's RFC finding. *See Winders*, 2012 WL 3137140, at *4 ("How, for example, should the need for 'multiple reinforcements for new learning' and 'difficulties with speeded or pressured performance' be addressed other than by restrictions to simple instructions, simple tasks, and only occasional, routine changes in the workplace? Indeed, the limitations adopted in the RFC are close to those recommended by Dr. Lester, the state-agency reviewing psychologist, who had the benefit of Dr. Butler's report.") (citation omitted). Here, for the reasons stated above, it is not clear that Drs. Stahl or Lester focused on the specific limitation at issue or that, in view of Dr. Butler's description of the plaintiff's difficulties, she would concur that the restrictions found by the administrative law judge would obviate the need for the accommodations she described.

Second, the administrative law judge purported to give great weight to the Butler opinion after specifically noting the limitation at issue. *See id*. at 23.

Third, and most importantly, the court does not need to try to divine, based on a DOT job description, whether a person with the restriction at issue could perform the jobs on which the administrative law judge relied.  The vocational expert testified that the restriction would compromise an individual's ability to perform those jobs.

In these circumstances, absent either an express rejection by the administrative law judge of the Butler finding at issue or an explanation as to how his RFC determination reflected it, his RFC determination is unsupported by substantial evidence.  That, in turn, is fatal to his Step 5 conclusion that the plaintiff could perform the jobs identified by the vocational expert at hearing. *See Richardson v. Social Sec. Admin. Comm'r,* No. 1:10–cv–00313–JAW, 2011 WL 3273140, at * 11 (D. Me. July 29, 2011) (rec. dec., *aff'd* Aug. 18, 2011) ("At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform.  Ordinarily, the Commissioner will meet the step 5 burden, or not, by relying on the testimony of a vocational expert in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy.  At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC.") (citations and internal quotation marks omitted).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge